No. 929

First Circuit

TODD v. MULE ET AL.

(March 8, 1932. Opinion and Decree.)

Borah, Himel & Bloch, of New Orleans, attorneys for plaintiff, appellant.

Walter T. Gilmore, of Morgan City, attorney for defendants, appellees.

ELLIOTT, J. Robert B. Todd, judgment creditor of Billie Mule, Jr., caused a writ of fieri facias to issue, on his judgment, placed same in the hands of the sheriff, and the sheriff was about to execute the same by seizing an automobile pointed out to him by plaintiff as the property of Billie Mule, Jr., when he was stayed by Miss Marie Mule, sister of Billie Mule, who made and placed before him her affidavit that the automobile in question belonged to her.

The plaintiff, Todd, thereupon proceeded against her, Billie Mule, the sheriff, and Lirette Chevrolet Sales by rule, calling on them to show cause why her affidavit should not be canceled on the ground that it was false, and that the automobile in question did not belong to her but to Billie Mule.

Miss Marie filed an answer to plaintiff's rule, in which she denied his averments and defended her claim to the automobile in question. Judgment was rendered in her favor, and the plaintiff has appealed.

The automobile about to be seized was bought in the name of Marie Mule, by Billie Mule, Jr. The authentic act of purchase states that it was bought by her through him as her agent. This new automobile which the plaintiff desired to have seized cost $722.60. The evidence shows that Miss Marie Mule purchased from Mrs. Billie Mule, Jr., an old car, which was traded in to Lirette Chevrolet Sales as payment to the extent of $225 on the new car.

Miss Marie Mule and Billie Mule, Jr., both reside at Morgan City. Miss Mule is 25 years old, and we gather from her testimony that she is the principal manager of a mercantile business conducted by her father.

In regard to the purchase of the new car from Lirette Chevrolet Sales, of Houma, she testifies that her brother knows more about automobiles than she does, and is better qualified than herself to attend to the details of buying one; that she intrusted to her brother the business of buying a new car and trading in her old one; that she turned over to him her old car and $300 for the purpose; and that he had authority as her agent to trade in the old one and give a note for the balance of the purchase price, all as was done, that she was not a party to any arrangement to defeat the plaintiff.

Billie Mule, Jr., testified that he received from his sister the old car for the purpose of being traded in on a new one; that he made inquiry among the dealers at Morgan City, but, learning that he could obtain from Lirette Chevrolet Sales a better trade-in value for the old car than he could from the Morgan City dealers, he went to Houma and bought from them; that his sister gave him $300 cash to pay on her new car; that he had the money with him when he arrived at Houma, but, after getting there, he got into a card game before he had seen the agent of Lirette Chevrolet Sales whom he desired to trade with, and lost $200 of her money; that Lirette Chevrolet Sales agreed to accept $100 cash and a check drawn by Marie Mule, per Billie Mule, Jr., for $200 on a bank in Morgan City, and that a notary public advised him that he could sign the act of sale and note for his sister, as was done; that he signed accordingly, acting in the matter throughout as agent for his sister; that he returned to Morgan City next day and borrowed $300 on his note from a Morgan

232

City bank, with which he paid the check for $200 given to Lirette Chevrolet Sales on the automobile, thus returning to his sister the amount he had lost gambling and keeping the balance of the sum he had borrowed.

The philosophy of our Civil Code is to the effect that a creditor has a moral and legal right to be paid out of his debtor's property. Civil Code, art. 1968.

"From the principle established by the last preceding article, it results that every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided. This can be done in the mode and under the circumstances set forth in the following rules." Civil Code, art. 1969.

The articles 1848, 1849, and 2288 are guides for the court in considering the acts of debtors alleged to have been done with the intent stated, but, when the acts attacked by a creditor are dependent for their validity on the veracity of the parties and facts and circumstances attending same and bearing thereon before and after the doing of the thing, are not inconsistent with honesty of intent and purpose, and there is no evidence to the contrary, the conclusion of honesty, generally speaking, should prevail.

It has been well said by an author who seems to have studied the subject closely that, while "fraud may be inferred from facts and circumstances, if these facts and circumstances are susceptible of a natural and probable explanation, consistently with the good faith and honesty of the parties, they do not prove fraud and the legal conclusion is in favor of innocence." Moore on Facts, vol. 1, p. 82, sec. 52.

This same author says in another place:

"In suits to set aside fraudulent conveyances it some times happens that the defendants attempt to prove the payment of a large amount of currency as consideration for a sale or mortgage of the debtor's property and the evidence consists of testimony that the party paying the money, had not only acquired or accumulated it in a singular manner, but had kept it, perhaps several thousand dollars, for years in a trunk or a box or a cupboard, etc. Occasionally in various other cases the same sort of a tale is told to account for the possession of a large sum of cash. It is often impossible directly to contradict the testimony," etc.

The dissertation continues at length, but to quote all that is said would carry too much that is not pertinent to the question immediately at hand. The author takes up the other side in the next section, saying:

"On the other hand it has been well said, if evidence is to be always disbelieved because the story told seems remarkable or impossible, then a party whose rights depend on the proof of some fact out of the usual course of events, will always be denied justice simply because his story is improbable." Moore on Facts, sec. 172, p. 214, and section 173, p. 220.

It may be in place to say that imprisonment for debt was abolished in this state in 1840. Chapter 7, sec. 4, of the Code of Practice (art. 726 et seq.), and Revised Statutes of 1870, sec. 1782, still deal with the subject, but only in cases where the debtor refuses to make a surrender of his property in bankruptcy. The law abolishing imprisonment, as a means of enforcing the payment of debts, was a step forward, in regard to which all reasonable men are agreed that it was a humane provision for the best interest of society. Nobody now desires or would have it otherwise; but since then, more often perhaps than before, the right of the creditor is not effective until the property of his debtor

has been uncovered by a judgment of the court.

The difficulties encountered by merchants and business men became a matter of public interest, to the extent that Act No. 94 of 1896 was adopted providing for the criminal punishment of debtors for certain enumerated acts, and since then various other enactments, having the same end in view, have been made into law, but it no doubt often happens that debtors successfully evade the intendment of the article quoted, and the creditor, in his effort to enforce his rights, merely adds to the sum he is already out.

In the present case, the facts and circumstances attending the purchase from Lirette Chevrolet Sales of the automobile in question are so suspicious that we are justified by the established jurisprudence of this state in holding that the burden of proof has been thereby shifted from the plaintiff and placed on the defendant to show that she really purchased the automobile in question and is the owner thereof, as she claims to be.

Looking to Miss Marie Mule to show the honesty and bona fide character of her claim to the automobile in question, we find that she has shown herself to be the bona fide owner of the old automobile that was traded in as part of the purchase price of the new one. She purchased it from Mrs. Billie Mule, Jr., wife of her brother, on October 29, 1929: At this time Miss Mule could not have intended to defraud the plaintiff or anybody else, because at the time she purchased the old car it does not appear that Billie Mule, Jr., owed anybody. As for the debt due the plaintiff, the evidence shows that it was not created until January 9, 1930. At first it only existed in a contingent form, but it became a real debt soon afterwards. The fact that it had no existence, however, at the time Miss Mule purchased the old car, lends some, but not much, support to her claim that she is the owner of the new car purchased from Lirette Chevrolet Sales, because Billie Mule, Jr., could have been the owner of the old car at the time the new one was bought. The situation was one in which plaintiff could not be expected to produce testimony to the contrary; still an ownership shown to exist at one time is supposed to continue until the contrary appears.

The debt which Billie Mule owed the plaintiff, in amount $600, with interest, was reduced to judgment on October 20, 1930. The automobile which the plaintiff desires to have seized was acquired from Lirette Chevrolet Sales on January 22, 1931. At that time the evidence inferentially establishes that Billie Mule had no property that he claimed to own; hence plaintiff's effort to have this new automobile decreed liable thereto. Miss Marie Mule and Billie Mule, Jr., have testified to all the facts and circumstances concerning the purchase of the new automobile, explaining how it came to be bought from Lirette Chevrolet Sales and paid for in the way it was done. The question of ownership depends on their testimony entirely. There is nothing inconsistent about what they have to say; nothing improbable or unreasonable. Their relation has to do with matters as to which contradicting testimony could not well be looked for. The district court found favorable to their veracity, believed their explanations, and decided the case accordingly. It is not a case in which the facts justify us in holding that his judgment is erroneous.

Judgment affirmed; plaintiff-appellant to pay the cost in both courts.