LOLLEY, J.
 

 |,Yulonda Perot appeals the judgment by the Second Judicial District Court, Parish of Claiborne, State of Louisiana, in favor of Mark E. Perot denying Yulonda’s Petition to Rescind the Extrajudicial Partition of Community Property. For the following reasons, we reverse the judgment of the trial court and remand the matter to the trial court for the determination of attorney fees to Yulonda Perot.
 

 Facts
 

 After approximately 22 years of marriage to Yulonda, Mark filed a petition for divorce on August 9, 2006. The petition was filed on Mark’s behalf by Danny New-ell, an attorney and close personal friend of Mark’s, and Yulonda had no knowledge that the petition had been filed. That evening at Mark’s insistence, he and Yu-londa went to Newell’s office to work out a settlement of the community property. The parties signed a partition of community property agreement (the “community property agreement”) and a corresponding quitclaim deed for a majority of the community immovable property. Yulonda claims that both Mark and Newell told her that Newell was not representing either party and that the agreement was a fair division of the property. The parties apparently revisited Newell’s office a couple of days later to re-sign the same agreement in the presence of two witnesses (the original agreement signed and dated August 9 actually bears two signatures for each of the parties). The community property agreement was filed in the record on August 11, 2010. Also on that day, a verifying affidavit by Mark was filed into the | grecord, in which he verified that the allegations of the petition were true and correct.
 

 Shortly thereafter, Yulonda filed suit to have the community property agreement rescinded on the grounds of error, fraud, duress, and lesion. After a three-day trial on the matter, the trial court rendered a judgment in favor of Mark, denying Yulon-da’s petition to rescind. Yulonda filed the instant appeal.
 

 Law and Discussion
 

 On appeal, Yulonda argues that the community property agreement should be rescinded for several reasons, primarily lesion and fraud. Considering the facts of the case, particularly the disturbing actions of Mark and his original attorney in the divorce proceeding, we conclude that the trial court applied the incorrect burden of proof regarding the fraud claim and erred in not rescinding the community property agreement for fraud.
 

 
 *1125
 
 An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Cole v. State Department of Public Safety and Corrections,
 
 2001-2123 (La.09/04/02), 825 So.2d 1134;
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880 (La.1993). To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong.
 
 Stobart, supra.
 
 |sEven though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Cole, supra; Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953;
 
 Shelton v. Standard/700 Associates,
 
 2001-0587 (La.10/16/01), 798 So.2d 60. Fraud may also result from silence or inaction. La. C.C. art. 1953. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art. 1955. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations. La. C.C. art. 1954. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.
 

 Initially, the trial court in this case erred by applying the improper burden of proof to Yulonda regarding her fraud claim against Mark. The trial court observed in its reasons for judgment that Yulonda sought | rescission of the community property agreement on the basis of error, fraud, duress and/or lesion. However, the trial court stated that Yulonda had the burden of proving her claims by clear and convincing evidence, launching into a somewhat detailed discussion of the evidence regarding the valuation of the community property involved. The trial court failed to consider the claim for rescission by the individual alleged causes. Had the trial court considered Yulonda’s items of claim of fraud individually, the applicable burden of proof would have been the more relaxed burden of a preponderance of the evidence.
 
 See
 
 La. C.C. art. 1957.
 

 In this case, Yulonda’s consent to the community property agreement was obviously vitiated by fraud, said fraud, which was perpetrated by Mark by his misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage. The fraud is evident from the record, and the trial court clearly erred in finding otherwise. Whereas Mark testified that he could not remember exactly how the community property agreement came into existence, Yulonda testified that she and Mark arrived at Newell’s office after business hours on the evening of August 9, 2006. She explained that the couple knew Newell well-he was a close family friend. According to Yulonda, Newell had some paperwork already
 
 *1126
 
 drawn up concerning the settlement of the community property when they arrived at his office; however, Yulonda testified that she had no knowledge that Mark had already instituted divorce proceedings against her.
 

 Among other provisions, the three-page community property agreement stated the following:
 

 |s8. The parties further acknowledge that each has been advised to seek the advice of counsel and relieve the undersigned notary/attorney from any and all liability,
 
 it having been explained that he is representing neither partg and will not be involved in angtliing other than reducing the parties [sic] agreement to writing in legal form.
 
 (Emphasis added).
 

 Yulonda testified that Newell said he represented neither party, and this provision in the agreement, drawn up by Newell, supports her testimony. Unbeknownst to Yulonda, Newell was indeed representing Mar — he had filed a petition for divorce on Mark’s behalf that very day. Moreover, that petition contained allegations referring to “the parties’ ” (i.e., Mark and Yulonda) community property settlement agreement “to be filed.” Specifically, the following allegation was made in the petition:
 

 The parties have settled community property pursuant to the Community Property Settlement Agreement to be filed. As part of this property settlement, Defendant, YULONDA PEROT, will received $250.00, per month as spousal support which will terminate upon the date a divorce judgment is obtained. Additionally, as part of the property settlement and any obligation to pay permanent alimony, Plaintiff, MARK E. PEROT, has agreed to maintain health insurance on YULONDA PEROT for one year from the date of this filing and to pay directly to Bossier Parish Community College, tuition for a period of one year, or until YULONDA PEROT is no longer enrolled, whichever is sooner.
 

 For an act to constitute fraud, it must be calculated to produce a misleading effect.
 
 McCoy v. City of Monroe,
 
 32,521 (La.App.2d Cir.12/08/99), 747 So.2d 1284,
 
 writ denied,
 
 2000-1280 (La.2001), 788 So.2d 441. Here, there is direct evidence that Mark misrepresented the facts to and suppressed information from Yulonda, with the effect of misleading her. Clearly, as represented to the trial court in Mark’s petition for divorce, Mark and Newell had already anticipated the terms of the community | ^property agreement before Yu-londa got to Newell’s office that evening. The overt misrepresentations made to Yu-londa later that day regarding Newell’s involvement in the matter and his legal representation of Mark had a direct bearing on her consideration to enter into an agreement which would forever relinquish her right to any community property owned by her and Mark. It is apparent that Mark did not want Yulonda to know that he was represented by Newell already, and the fact that Newell was actually representing Mark in his divorce undoubtedly gave him an unfair advantage in the negotiation and completion of the community property agreement. See
 
 Skannal v. Bamburg,
 
 44,820 (La.App.2d Cir.01/27/10), 33 So.3d 227,
 
 writ denied,
 
 2010-0707 (La.05/28/10), 36 So.3d 254, where this court determined that the “material inducement” led that plaintiff to enter into a “deal ... so peculiar and unfavorable to [the plaintiff] that it could not have occurred in the absence of fraud.”
 
 Id.
 
 at 238.
 

 Furthermore, although it could be argued that Yulonda may have been able to later ascertain the truth of Newell’s legal relationship with Mark without difficulty,
 
 *1127
 
 Mark’s urgency and coercion, coupled with the deceitful assurances and misrepresentation regarding Newell’s role in the agreement, made it impossible for her to ascertain the truth of the matter at the time that she was called to act. Moreover, even though she and Mark were on the brink of divorce, she apparently trusted him and Newell, whom she characterized as a “family friend.” Clearly, a relationship of confidence existed that reasonably induced Yulonda to rely on Mark’s and Newell’s assertions and representations.
 

 17Here, the dual fraud perpetrated by Mark and his attorney Newell is patent on the record. In failing to consider the activity and circumstances surrounding the execution of the community property agreement, which was highly evident by the record before it, the trial court erred in not finding that Yulonda proved by a preponderance of the evidence that Mark’s (and arguably his attorney’s) actions constituted fraud sufficient to rescind the community property agreement.
 
 [1]
 

 Additionally, in Yulonda’s petition to rescind the community property agreement, she alleged entitlement to attorney fees pursuant to La. C.C. art. 1958, which states: “The party against whom rescission is granted because of fraud is liable for damages and attorney fees.” Once fraud is established, the party responsible for the fraudulent activity is liable for damages and attorney fees under art. 1958.
 
 Osborne v. McKenzie,
 
 48,658 (La.App.2d Cir.10/22/08), 998 So.2d 187,
 
 writ denied,
 
 2008-2555 (La.01/09/09), 998 So.2d 726. Here, there has been no showing made regarding the amount of attorney fees incurred by Yulonda in seeking the rescission of the agreement for fraud; therefore, on this limited issue, we remand the matter to the trial court to take evidence considering the attorney fees and to make an award of such to Yulonda pursuant to La. C.C. art. 1958.
 

 Finally, for the reasons stated herein, it is unnecessary to consider the value of the actual community property made the subject of the community property agreement, as any consideration of the legionary nature of the agreement is pretermitted by the conclusion that Mark fraudulently induced Yulonda to enter into the agreement in the first place.
 

 | ^Conclusion
 

 For the foregoing reasons, the trial court’s judgment in favor of Mark Perot is reversed and the community property settlement agreement dated August 9, 2006, is rescinded. All costs of this appeal are assessed to Mark Perot. The matter is remanded to the trial court for the specific issue of determining the attorney ■ fee award to Yulonda Perot pursuant to La. C.C. art. 1558.
 

 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 APPLICATION FOR REHEARING
 

 Before STEWART, GASKINS, DREW, MOORE and LOLLEY, JJ.
 

 Rehearing denied.
 

 DREW, J., would grant rehearing.
 

 [1]
 

 . The rescission of the community property agreement has the effect of rescinding the corresponding quit claim deed, because the deed was entered into pursuant to the terms of the agreement.