CARAWAY, J.
_jjln this action, a family-owned limited liability company seeks to rescind four sales of the company’s immovable property. The plaintiff claims that the company manager was improperly influenced and induced by her son to convey to him the properties for prices significantly less than the fair market value. The company asserts that the manager’s execution of each sale was from the advice and within the confidence of her son, thus vitiating her consent by fraud. The trial court dismissed the limited liability company’s claims for rescission of the sales contracts on the exception of prescription. Finding that the claims regarding three of the four sales have not prescribed, we affirm in part and reverse in part.

Facts

After the death of Zack Sanders, the assets of the former community between *438 Zack and Ethel Sanders[1] were placed into three limited liability companies wholly owned by Ethel Sanders (“Ethel”) and her children, Colton, Galen and Linda Sue. Specifically, the Sanders Family, LLC No. 1 (the “LLC”) was established on January 3, 1997, and it owned various real estate of the former community, the ownership of which is now contested. Ethel was listed as managing partner and owned 50% of the LLC membership interest, and the children each owned a one-third membership in the remaining one-half interest. Colton Sanders was named as registered agent.
|gOn November 19, 2007, the LLC and Larry L. Taylor, as agent for Linda Sue Sanders, individually and derivatively, filed suit against Colton Sanders, Deborah Sanders, Claiborne Timber, LLC (collectively the “Defendants”), and as a nominal defendant, the LLC, seeking rescission of four sales of the LLC’s property to the Defendants based upon claims of lesion beyond moiety, fraud and breach of fiduciary duty. Beginning in 2001, when Ethel was approximately 76 years old, the sales began. The following four deeds, executed by Ethel on behalf of the LLC, were placed at issue:
1) July 30, 2001 sale to Claiborne Timber, LLC, of six tracts of land located in Bienville Parish for the sum of $110,000 (“Claiborne Timber Sale”)[2]
2) September 5, 2003 sale to Colton and Deborah Sanders of a tract of land with a home in Bienville Parish for the sum of $100,000 (“Bienville Parish Sale”)
3) June 22, 2005 sale to Deborah Sanders of lots 15 and 16 of Waller Subdivision for the sum of $60,000 (“Waller Subdivision Sale”)
4) November 30, 2005 sale to Deborah Sanders of property in Whittington Subdivision for the sum of $100,000 (“Benton Road Property Sale”). On May 31, 2005, the LLC had granted an option to purchase the property to Deborah Sanders for the stated consideration of $10.00 and other valuable consideration. The term of the option extended to June 2008.
On November 18, 2008, the trial court dismissed the case with prejudice after sustaining the defendants’ exception of peremption/ prescription. After an appeal by plaintiffs, this court reversed the judgment and remanded to allow the plaintiffs to amend their petition “to allege fraud lswith greater particularity” in Sanders Family, L.L.C. v. Sanders, 44,632 (La. App.2d Cir.9/23/09), 21 So.3d 433 (hereinafter “Sanders I ”).
On remand, the plaintiffs supplemented their petition. The common thread of their claims attacking each sale was that Colton (or his company, Claiborne Timber, or his wife) had acquired the properties for values far less than the fair market value and had prompted each sale by false information and nondisclosures intended to deceive his mother.
Defendants again filed the exception of prescription challenging the timeliness of the action contesting the four transactions. At the hearing on the peremptory excep *439 tion, the court heard testimony from Ethel and Colton regarding the facts surrounding the subject property transactions. Additionally, many documents of Ethel’s various business transactions were submitted by Defendants to demonstrate her business savvy and understanding of the subject transactions. Finally, the two witnesses and notary for the Claiborne Timber Sale testified.
On April 26, 2010, the trial court rendered a written ruling and final judgment granting Defendants’ exception of prescription regarding each of the four transactions. A signed final judgment followed on April 5, 2011, which dismissed “all of the claims of Plaintiffs.” This appeal ensued.

Discussion

We will review each of the four transactions in detail below. However, we must first identify the cause of action which has been attempted to be alleged for the rescission of each sale and determine the applicable prescriptive period. From our review of the record and the |4arguments, we conclude that the remedy of rescission for the specific fraud identified in Civil Code Article 1954 is sought by plaintiffs. The heading for that article indicates that the fraud involves a breach of “confidence between the parties.” The article states:
Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.
This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations.
La. C.C. art. 1954.
Article 1954 is contained in the Civil Code’s chapter for vices of consent in the formation of the contract. Consent may be vitiated by error, fraud or duress. La. C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1958.
The plaintiffs’ cause of action under La. C.C. art. 1954 concerns a breach of a relationship of confidence between a trusted party (for this discussion, “trustee”) and his confidante who gives her consent to a contract in reliance upon the trustee. The cause of action consists of (1) the trustee/confidante relationship; (2) the confidante’s reasonable reliance upon the trustee despite the fact that the confidante “could have ascertained the truth” of the flaw in the contract “without difficulty, inconvenience, or special skill;” (3) assertions or representations by the trustee made with the intention to obtain an unjust advantage for the trustee (see La. C.C. art) ñ 1958); and (4) the confidante’s later discovery that her consent to the contract was induced by the trustee’s misrepresentation or his suppression of material facts. Where a party has charged as fraudulent an action involving close relatives, either by blood or marriage, the courts have deemed the relationship, in itself, a highly suspicious circumstance. Perot v. Perot, 46,431 (La.App.2d Cir.8/10/11), 2011 WL 3477028; George A. Broas Co. v. Hibernia Homestead & Sav. Ass’n., 134 So.2d 356 (La.App. 4th Cir.1961); see also, Todd v. Mule, 19 La.App. 230, 140 So. 50 (La.App. 1st Cir.1932).
Notably, within the cause of action itself is the essential element for the later discovery by the confidante after the date of the contract. This discovery element of the cause of action is then expressly acknowledged in the applicable five-year rule *440 of prescription in La. C.C. art. 2032, which provides, in pertinent part:
Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud.
Therefore, if the confidante files suit for the trustee’s fraud five years after the date of the contract, she must defend any exception of prescription by showing that she only discovered the trustee’s fraud within the five years before filing suit. The issue becomes, when did the confidante first understand that the trustee misrepresented the transaction. This was the relevant inquiry for the Claiborne Timber Sale which occurred in 2001, six years before the filing of suit.
The other three transactions at issue occurred within five years of |r,suit, and therefore, Defendants had the burden of proof. A party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. Cichirillo v. Avondale Industries, Inc., 04-2894 (La.11/29/05), 917 So.2d 424.
Evidence may be introduced to support or controvert any objection pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, an objection of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true. La. C.C.P. art. 931; Cichirillo, supra.
All that must be considered on the peremptory exception of prescription is whether there is sufficient evidence to show that the alleged time period has run under the requirements of the particular code article involved. The trial court need not go into the merits of the case. Montgomery v. Breaux, 297 So.2d 185 (La.1974); Allstate Ins. Co. v. Fred’s Inc., 44,508 (La.App.2d Cir.3/17/10), 33 So.3d 976, unit denied, 10-0883 (La.6/18/10), 38 So.3d 331; Reed v. Abney, 04-1928 (La. App. 1st Cir.2/10/06), 928 So.2d 585.
Appellate review of the record following a hearing on exceptions is governed by manifest error when evidence has been introduced at the hearing. Cichirillo, supra.

Claiborne Timber Sale

In their original petition, Plaintiffs made the following allegations concerning the 2001 Claiborne Timber Sale of 337.63 acres in Bienville Parish:
|71) Colton approached Ethel Sanders and indicated to her that it was in the best interest of the LLC to sell the tracts of land.
2) Colton failed to disclose to a disinterested majority of the members of the LLC that Claiborne Timber, LLC was a limited liability company formed the day before the execution of the Claiborne Timber Sale with Colton as its sole member.
3) On the day of the sale, Ethel did not have authority to sell the interest in the property. Subsequently Colton presented a certificate to the other members of the LLC which authorized Ethel to execute such a sale and to ratify all prior transactions.[3]
*441 4)On March 22, 2005, Claiborne Timber, LLC executed an oil, gas and mineral lease on the subject 337.63 acres for a consideration of $250-$300/ acre, or an amount roughly sufficient to pay the full purchase price for the entire tract.
In the supplemental petition, plaintiffs made the following additional allegations regarding the sale:
1) Colton approached Ethel and indicated that it was in the best interest of the LLC to sell a “portion” of the family property owned in that parish across the lake from the family home in Ringgold.
2) Colton informed his mother that a group of third party “investors” had formed Claiborne Timber and desired to purchase the property.
3) Colton told his mother that Claiborne Timber desired to pay a fair market price for the tract and its timber and that the sale of the tract was necessary because it was burdened by a $107,000 mortgage. Colton knew his mother did not like debt. No such debt existed.
4) No appearances by a representative of Claiborne Timber was made at the execution of the sale.
5) Colton indicated to his mother that he had negotiated a purchase price of $110,000 which was a fair value for the tract of land. Colton knew that the fair market value of the entire tract was several ^multiples of the purchase price being negotiated for the sale of the tract.
6) The cash sale deed was not executed before a notary and the legal description of the property being conveyed was not attached to the deed at the time of the execution of the document.
7) Colton had the act of sale signed by a notary outside of the presence of Ethel Sanders and the witnesses, fraudulently attached a legal description embracing all of the 337.63 acres, despite never having mentioned the sale of the additional tracts to his mother. The land described in the legal documents was twice the amount of land discussed by Colton with his mother. Colton misrepresented the extent and nature of the property being conveyed and subsequently attached a legal description conveying the entire 337.63 acres without the knowledge or consent of his mother.
8)Colton fraudulently and with an intent to deceive his mother induced her to sell the property and failed to disclose to her that Claiborne Timber was a legal entity formed by himself and his wife and the sale was negotiated by Colton for his owner financial interest. Colton misrepresented the identity of the purchaser of the tract; negotiations were solely for their undisclosed personal gain.
At the hearing, Colton testified that he is one of the principals of Claiborne Timber, LLC. He stated that his mother and brother discussed negotiations and offers regarding the Claiborne Timber Sale and that a verbal offer of $110,000 had been made for the timberland, although there was never a written offer or written negotiations. Colton stated that he spoke with an individual who represented a group of investors regarding the property, although he could not remember the individual’s name. A bona fide verbal purchase offer was communicated to Colton for the sum of $110,000 on behalf of the investors, although nothing was reduced to writing. Colton claimed that he told his mother and brother that he was conversing with “people purporting to be from Claiborne Parish that were showing an interest in buying *442 the cutover timber land that existed in | ¡¡Bienville Parish.... ” Colton referred to the group as the “Claiborne Timber people.”
Colton testified that the name of his limited liability company was Claiborne Timber. He met with his attorney to discuss “what we were doing,” and the attorney suggested that an LLC be formed as an “instrument of purchase.” Colton stated that he wanted the property in the name of an LLC because of “poachers.” Plaintiffs showed the filing date for Claiborne Timber, LLC as July 27, 2001, three days before the Claiborne Timber Sale.
Colton testified that he believed the price of $110,000 ($300 per acre) was a fair price, although he denied ever telling his mother that it was a fair price. Instead, Colton testified that the price was offered by an unnamed bona fide third party purchaser who never ended up with ownership of the property. Colton testified that his mother was entitled to trust him.
Ethel Sanders testified about the discussions she had with Colton about selling the property which she identified on a Google map. She described the portion of the property that she thought was being sold as “the land across the lake from the house.” Ethel testified that Colton told her that the LLC had a debt of $107,000 and that he believed he could get somebody to pay that much for the land.[4] Ethel desired to have the debt settled, and it was agreed that the land would be sold. Ethel believed that the LLC may have been in debt because it had taken over her daughter’s debt, but she was not sure. Ethel testified that she was never able to get anjj^answer as to what the $107,000 debt was for and that she now believed there was no debt. Colton informed her that he had a buyer which she understood to be “a group of professional people that bought up land.” Ethel stated that she signed the July 30, 2001 sale, but she thought that Claiborne Timber, LLC was “just a group of businessmen.” She did not believe that Colton or his wife were any of these business people.
Ethel testified that Colton told her that the $110,000 was a fair price for the land. She testified that she later became concerned about the Claiborne Timber Sale in 2007 when she heard that the Benton Road property was sold for “a huge amount.” She told her daughter to find someone to look into it. She learned that Colton was a part of Claiborne Timber, LLC by her attorney in 2007.
Additionally, there was considerable testimony regarding Ethel’s competency as an elderly person in dealing with the family properties and Colton’s relationship with his mother and the LLC. Ethel testified that she had no experience in negotiating transactions for the purchase of real estate and that her husband conducted all of the family business over the years. She had no financial experience and relied on Colton to advise her regarding her dealings with the LLC. Ethel testified that she relied on Colton to review the LLC’s real estate values with her and to manage and operate the LLC on a day-to-day basis.
On cross-examination, Ethel identified a cash sale dated June 15, 2005, which transferred 78 acres from the LLC to her name. She testified that Colton was not available at the time of this transaction so she asked an lnattorney for help. Two days later she leased the minerals on the 78 acres. *443 She admitted she did this without Colton’s help because he was out of town.
Ethel testified that she never spoke with the LLC accountant who was directed by Colton. Ethel testified that it is her practice to sign documents without reading them, “if somebody that I can trust” advised her. Ethel did not look at the financial records of the LLC when Colton started keeping all of the records. She “just left it up to him.” She looked to Colton on the day-to-day matters of the LLC. He was paid $2,000 a month by the LLC for handling those matters.
The factual determinations of the trial court’s written ruling on the Claiborne Timber Sale are summarized as follows:
1) Ethel understood she was selling a large amount of acreage from the LLC’s property in Ringgold.
2) While the trial court did not decide if Linda Sanders’ alleged $107,000 debt was emphasized to Ethel by Colton (their testimony contradicts), the trial court did find that Ethel did not want the 337 acres to “be a financial burden to her or the members of the LLC.”
3) Ethel understood her tasks as the LLC manager and she continued to exhibit the “intellectual capacity” in business dealings after the 2001 sale.
4) The improper notarization and lack of property description attachment to the deed did not occur.
From this review, we find that the allegations regarding the Claiborne Timber Sale do state a cause of action under Article 1954 and that the evidentiary hearing and the trial court’s fact rulings do not alter that conclusion. The elderly mother’s relationship with her son was a “relation of confidence” concerning this property matter of the LLC. Colton did | ^withhold the true identity of the purchaser and did not dispute that Ethel thought she was selling to a third party. In the absence of an interested third party purchaser being identified and testifying, Colton’s testimony was contradictory on a critical point. He said that he never expressly told his mother that the $110,000 purchase price was a fair price. Yet, he asserted that on the basis of a price set by the unidentified party(s), the important fair market value assessment by Ethel was made. With all of this, along with the alleged price deficiency in the sale and no expert testimony regarding the fair market value of the property in 2001, the trial court made no factual ruling regarding the value of the property at the time that Colton acquired it through his limited liability company.
The only fact ruling by the trial court that goes to the assessment of a claim under the second paragraph of Article 1954 was its conclusion that Ethel did not want the 337-acre tract to “be a financial burden to her or the members of the LLC.” In her testimony, she attributed such concern to what Colton told her about a $107,000 debt that never existed as a burden against the property according to plaintiffs’ assertions.
The other fact conclusions of the trial court and a large focus of defendants’ assertions for the exception of prescription are that Ethel had a sufficient business acumen, was not mentally impaired, and “could have ascertained the truth without difficulty, inconvenience, or special skill” of the fair market value of the Claiborne Timber tract. Such “skill” is addressed in the first paragraph of Article 1954; yet it becomes irrelevant in large measure under the second paragraph of the Article when a skilled and Incompetent party gives her consent to a contract after being reasonably induced by a trusted party to forego such scrutiny of the transaction.
*444 Most importantly, all of the above discussion, the trial court’s ruling on the Claiborne Timber Sale, and much of the arguments of the parties pertain to the merits of the claim and not to its timeliness within the five-year prescriptive period at issue. There was no factual dispute that Ethel only later discovered, within five years before this suit, that Claiborne Timber, LLC was Colton’s limited liability company. She only then made inquiry to determine if the price paid was a fair market value. Only within the five years before filing suit did she question the $107,000 debt as a financial burden against the property. Ethel had the burden of proof concerning her discovery of the alleged fraud, and she proved that her discovery occurred within the five years of this suit. Accordingly, plaintiffs’ cause of action for rescission of the Claiborne Timber Sale has not prescribed.

Benton Road Sale

In their original petition, Plaintiffs made the following allegations concerning the November 80, 2005, Benton Road Sale:
1) As was known by Deborah and Col-ton, the terms and consideration paid for the tract of land “was grossly inadequate and unfair to Sanders Family, LLC No. 1, representing a mere fraction of its then current value.”
2) As set forth more fully in the Act of Cash Sale referenced as Exhibit I, on March 29, 2006, Deborah and Colton sold a portion of this tract to the Parish of Bossier for $119,803.32. The tract was sold to Bossier Parish for a long planned right-of-way through the rest of the property for an extension of Wemple Drive, which enhanced the value of the remaining tracts.
1143) As shown by Exhibit J, dated January 18, 2007, Deborah and Colton Sanders sold a portion of this tract to Wood & Wood Property for a purchase price of $310,552.00.
In the supplemental and amended petition, the plaintiffs alleged the following additional facts:
1) During the spring of 2005 Colton began making representations to family members that the LLC was in dire need of money and that a liquidation of immovable property was necessary. The statements were false, misleading and substantially exaggerated. The statements were made by Colton with the intent to deceive and frighten Ethel Sanders and in an attempt to get her to sell the property to the benefit of Colton and Deborah.
2) On May 31, 2005, Deborah Sanders caused Ethel Sanders to grant her an “option” agreement for the subject tract of land. Ethel thought the agreement was a right of first refusal for a tract of land along Benton Road in Bossier Parish.
3) In the option agreement, Ethel Sanders agreed to sell the tract of land to Deborah for the sum of $100,000.
4) Colton and Deborah had reason to know or knew that the tract of land was of substantial value and that plans were underway to extend ‘Wemple Road” across the property, thereby greatly enhancing the value of the property.
5) By fall of 2005 Colton began negotiations with Bossier Parish about the consideration to be paid for the extension of Wemple Road, without advising Ethel Sanders or other members of the Sanders family.
6) Prior to his knowledge of the Wemple Road extension, Colton knew that the value of the tract of land was appreciating rapidly in as much as he had negotiated with third parties for its sale at $600,000. Colton never revealed the existence of these negotiations or the price *445 he had been offered for the land when he dealt with his mother about selling the land to his wife. Colton sought to conceal the real value of the property and obtain the property for the benefit of himself and his wife at a much lower cost than fair market value.
7) On November 30, 2005, Deborah Sanders, with the consent of her husband, presented an act of cash sale to Ethel Sanders for the purchase of the tract for the sum of $100,000, indicating to family members that this price, 20% of the price offered to third parties, was fair market value and necessary because of the dire cash need of the |1BLLC. These assertions were false and misleading and damaged the LLC. Colton threatened to sue his mother if she did not allow them to exercise the option.
At the hearing, when asked about the Benton Road Sale, Colton testified that the purchase price was $100,000. His wife had signed an option agreement for the property on May 31, 2005, which he identified. He testified that he knew nothing about the Wemple Road extension when his wife purchased the property. Colton was also unaware that his mother had earlier listed the property for sale. Colton was shown a real estate listing of the property signed by his mother in 1999 for $593,722.80. Colton testified that the value placed on the property in his father’s succession was $90,000.
Ethel did not recall signing any document listing the Benton Road property in 1999 for $594,000. She recalled that she sold the Benton Road property for $100,000. She knew she signed an option agreement for the property. At the time of the option, she testified that she was not ready to sell the land.
As to the Benton Road Sale, the trial court ruled as follows:
On Property Sale No. 4, Petitioners state that the sale should be annulled because Ethel Sanders believed that an Option Contract was a Right of First Refusal and that Colton and Debbie Sanders knew the price of the property would rise substantially because Wemple Road was to be extended but did not inform Ms. Sanders of this fact. The Court again turns to Ethel Sanders’ own actions during the period in order to properly understand what she understood at the time of the sale. The above referenced removal of property (Parents’ Homeplace) from the LLC and mineral lease performed by Ethel Sanders was executed at nearly the same time as this particular property sale. As stated above, Ms. Sanders performed the removal and mineral lease free from help and influence of her children. She also sought out an attorney to ensure that her desired wishes were carried out appropriately. The Court also takes notice that no 116evidence has been presented to the Court that the Defendants had knowledge of Wemple Road being extended when Colton Sanders asked Ethel Sanders for an option on the property. As such, the Court finds that the prescriptive period applies to Property Sale, No. 4 and that fraud has not been shown by the testimony given.
Plaintiffs’ allegations regarding the Benton Road Sale also state, in our opinion, a cause of action under Civil Code Article 1954. The sale was made directly to Deborah Sanders and is therefore different from the sale to Claiborne Timber, where Colton and Deborah’s purchasing interest was not revealed to Ethel. Nevertheless, the allegations of Colton’s exaggeration of the LLC’s liquidity, the large discrepancy in the price and Colton’s knowledge of the development potential for the property support a claim for breach of the “relation of confidence” which vitiat *446 ed Ethel’s consent to the option/sale contract.
Not only was there a stated cause of action, the 2005 contracts for the Benton Road Sale occurred well within five years of the filing of this suit in 2007. Therefore, it would be a very difficult burden on the defendants to somehow show that these written contracts in 2005 actually occurred many years earlier so that the cause of action for rescission has prescribed. The only issue for the exception of prescription was this timing issue and not the merits of the Article 1954 claim.
With this imposing burden for the exception of prescription, the offered evidence of the transaction and the trial court’s ruling instead reflect a partial examination of the merits of the ease. Significantly, the Plaintiffs’ allegations of the great discrepancy between the $100,000 price for the sale and the land’s actual value was supported by the evidence of the 2006 and |172007 sales of a small portion of the Benton Road property for approximately $430,000. The acreage in question bordered 320 feet on Benton Road (La. Hwy.3) and was approximately 1,250 feet in length, totaling over 13 acres. The Wemple Road tract was sold by Colton and Deborah to Bossier Parish for $119,000 and comprised a 1.90-acre right-of-way through the tract, providing road frontage lots to the Sanders property on both sides. The sale to Wood & Wood was for a 140-foot by 174-foot lot (approximately 0.6 acre) at the corner of Benton Road and Wemple Road. Therefore, the two sales by Colton and Deborah totaled only 2.5 acres of the 13-acre tract with the improvement of the public roadway contributing to enhance the value of the remaining property. Beyond the allegations of the petition regarding these sales, Plaintiffs also established at the hearing that Ethel had listed the property for sale in 1999 for $594,000.
Colton’s testimony at trial was that in May 2005 when Deborah obtained the option contract for the Benton Road property, he did not have knowledge of the Wem-ple Road project. Nevertheless, he did not testify concerning his assessment in May 2005 of the fair market value of the property. He likewise did not testify that he advised Ethel that the $100,000 price for the property as listed in the option was a fair market value in May 2005.
The trial court’s ruling concerning Col-ton’s lack of knowledge of the Wemple Road project, therefore, was not a ruling on prescription and not a complete factual examination of the merits of the various aspects of Plaintiffs’ claim under Article 1954. Plaintiffs’ allegations that the Benton | iSRoad Sale was prompted by Colton’s representation that the LLC was “in dire need of money,” so as to “frighten” Ethel, was unaddressed by the trial court. Moreover, the trial court’s ruling did not cite Article 1954 and appears to rest primarily on its finding of Ethel’s general competency in other business dealings for the LLC. Yet, as explained above, Ethel’s competency is not the principal focus of an Article 1954 claim, which concerns a trusted party’s inducement of an otherwise competent party.
Accordingly, we reverse the trial court’s dismissal of the claim of the Benton Road Sale. The cause of action for rescission of that sale has not prescribed.

Waller Subdivision Sale

Attached to the original petition was an Act of Cash Sale from the LLC to Deborah Sanders for property in Waller Subdivision, Bossier Parish, LA for the sum of $60,000, dated June 22, 2005. The original petition alleged that on June 22, 2005, Deborah Sanders, acting with the knowledge and consent of Colton, executed the *447 Waller Subdivision Sale. The pleadings alleged that Colton and Deborah “were well aware, the consideration paid to Sanders Family, LLC was grossly inadequate and unfair to Sanders Family LLC for this tract of land.” After remand of the case following the Sanders I ruling, one additional allegation regarding this sale was made in the supplemental petition. The allegation was actually expressed in connection with the supplemental allegations relating to the Benton Road Sale, as quoted above, concerning Colton’s misrepresentations of the LLC’s liquidity in the spring of 2005. At the hearing on the |19exception of prescription, neither Colton nor Ethel testified regarding this sale.
With the allegations concerning Colton’s deception of the financial condition of the LLC and the “grossly inadequate” consideration paid for the property, we find again that a cause of action is stated for the Waller Subdivision Sale. Likewise, with the possibility that one or more of the other prior transactions may be proven as a breach of the “relation of confidence,” such transaction(s) would be relevant as circumstantial evidence concerning the Waller Subdivision Sale. The claim for rescission is not prescribed on the face of the petition, and the defendants offered no evidence showing that the transaction actually occurred outside of the applicable five-year period. Accordingly, the trial court’s dismissal of the Plaintiffs’ claim for rescission of the sale is reversed.

Bienville Parish Sale

In the original petition, Plaintiffs alleged the following facts regarding the $100,000 Bienville Parish Sale dated September 5, 2003:
1)Paragraph 18 described the above-noted transaction and further stated that the 34 acre tract sold included a valuable three bedroom, three and one-half bath home with tongue in groove cypress construction, having a value of approximately $250,000.
2) The thirty four acres and home were purchased for less than one-half of its actual value.
3) Plaintiffs alleged that the terms and conditions of the cash sale deed was not in the best interest of the Sanders Family LLC and the consideration paid was inadequate.
4) On March 22, 2005, Colton and Deborah Sanders executed an oil and gas lease on the 34 acres for consideration of $250-$300/acre.
In the amended and supplemental petition after Sanders I, Plaintiffs 12omade no new allegations regarding the Bienville Parish Sale.
At the hearing, Ethel was questioned regarding a 1998 conveyance of the same 34 acres in Bienville Parish to Col-ton, which she made as manager of the LLC. Ethel recognized her signature on the document, but generally had little recollection of the events. The sale was later rescinded, apparently as the result of a prior family dispute.
From these allegations and the nature of the property conveyed, we do not find that sufficient allegations have been made for the rescission of the sale for grounds other than lesion. Therefore, the trial court’s dismissal of this claim on the exception of prescription is affirmed.

Conclusion

For the reasons expressed, the plaintiffs’ claims regarding the Claiborne Timber Sale, the Benton Road Sale, and the Waller Subdivision Sale have not prescribed, and the trial court’s ruling on those sales is reversed. The trial court’s dismissal of the claim regarding the Bienville Parish *448 Sale is affirmed.[5] Costs of appeal are assessed to appellees.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
STEWART, J., concurring in part and dissenting in part.

. After Zack’s death, Ethel was recognized as his surviving spouse and sent into possession of one-half interest of the community property. The other one-half interest was divided equally between the three children, subject to Ethel’s usufruct.

. Tract 6 of the included tracts was described as "a three (3) acre tract located within the corporate limits of Ringgold, Louisiana” which encompassed what testimony described as commercial property. The primary focus of the transaction apparently involved only the other five tracts totaling 337.63 acres of rural timberland.

. In support of its exception of prescription the defendants attached a copy of a document dated May 17, 2004, entitled "Certificate of Members as to Authority of Limited Liability Company" which gave Ethel Sanders the general authority to purchase, sell, donate, transfer, lease, or mortgage property for the LLC. The document also bound the Company and all members to the documents executed by Ethel Sanders and ratified all *441 transaction executed the date of the certificate. The defendants also attached copies of the LLC’s Articles of Organization and Operating Agreement.

. As a matter of rebuttal and in lieu of Col-ton's further testimony, it was stipulated that he would deny ever having told his mother that a $107,000 mortgage or other debt existed affecting the LLC's property.

. While we have decided the prescription issues under the 5-year fraud provisions, we pretermit any ruling concerning the allegations of Colton's management or employment by the LLC that urge circumstances which could allow for a fiduciary relationship. See 9:3801; Texana Oil and Refining Co. v. Belchic, 150 La. 88, 90 So. 522 (1922), Neal v. Daniels, 217 La. 679, 47 So.2d 44 (1950); Heart’s Desire, LLC. v. Edwards, 46,222 (La. App.2d Cir.4/27/11), 2011 WL 1630175; Cenla Physical Therapy and Rehabilitation Agency, Inc. v. Lavergne, 94-1538 (La.App. 3d Cir.5/3/95, 657 So.2d 175); Odeco Oil & Gas Co. v. Nunez, 532 So.2d 453 (La.App. 1st Cir.1989), writ denied, 535 So.2d 745 (La. 1989). See also Scurria v. Hodge, 31,207 (La. App.2d Cir. 10/30/98), 720 So.2d 460, writ denied, 99-0011 (La.3/19/99), 739 So.2d 782.